United States District Court
Southern District of Texas
**ENTERED**
September 10, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:21-cv-289

ALDO PENA PENAFLOR, SR., TDCJ # 01311140, PLAINTIFF,

v.

ANTONIO WILLIS, *ET AL.*, DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Aldo Pena Penaflor, Sr., an inmate in the Texas Department of Criminal Justice – Correctional Institution Division (TDCJ) filed this lawsuit under 42 U.S.C. § 1983 alleging that two correctional officers, Antonio Willis (a/k/a Antoinio Willis) and Devon Collins, violated his constitutional rights when they used excessive force against him at the Memorial Unit on June 29, 2020, while both of his hands were cuffed behind his back.[1] Penaflor represents himself and has paid the filing fee.

Willis and Collins have moved for summary judgment, seeking dismissal of the Eighth Amendment claim against them. Dkt. 70. Penaflor has not responded

---

[1] At the time the incident occurred, the Memorial Unit was called the Darrington Unit.

to the summary-judgment motion. Having considered the motion, the applicable law, and the record, the court denies the motion.

## I.   <u>BACKGROUND</u>

### A.   **Penaflor's Allegations**

On June 29, 2020, at around 9:30 a.m., Officer Willis was escorting Penaflor back to his cell after a unit classification committee hearing. *See* Dkt. 19 at 1–2, 7; Dkt. 6 at 5; Dkt. 7 at 1. Penaflor's hands were handcuffed behind his back. *See* Dkt. 19 at 4, 6; Dkt. 7 at 1. As they were walking towards the cell, Penaflor stopped walking for "a couple of seconds" and asked Officer Willis about his personal property.[2] Dkt. 19 at 3, 4; Dkt. 7 at 1. Penaflor emphasizes that he did not refuse housing, disobey an order, or make any threatening moves—he simply asked about his personal property. Dkt. 19 at 4; Dkt. 7 at 1. Officer Willis allegedly replied by telling Penaflor to "get [his] wet back ass back to [his] cell[,] before him and his homeboy woop me since the camera don't work." Dkt. 19 at 3; Dkt. 7 at 1. Officer Willis pushed Penaflor towards the wall, and then slammed him to the ground. Dkt. 19 at 3; Dkt. 1 at 7. Penaflor landed on his stomach. Dkt. 19 at 5; Dkt. 7 at 1. Willis put "all [of] his weight" on Penaflor's back and while holding Penaflor down with his left hand, Willis punched Penaflor several times in the face with a closed fist. Dkt. 19 at 5–6; Dkt. 7 at 1.

---

[2] Per TDCJ policy, Penaflor had been kept away from his personal property for several days leading up to the unit classification committee hearing. *See* Dkt. 19 at 3.

Officer Collins then came running towards them and began hitting Penaflor's head and face with a closed fist. Dkt. 19 at 9; Dkt. 7 at 1–2. Collins and Willis stopped punching Penaflor when they saw "rank" approach.  Dkt. 19 at 5, 10; Dkt. 7 at 2. Collins then put his knee on Penaflor's neck and "pressed down hard[,]" and Penaflor told him that he could not breathe. Dkt. 19 at 9; Dkt. 7 at 2. Sergeant Annette Baker told Collins to pick up Penaflor and Penaflor was escorted to his cell. Dkt. 19 at 9; Dkt. 7 at 2. Penaflor was later found guilty at a disciplinary hearing for refusing to obey an order. Dkt. 19 at 25.

As a result of the excessive-force incident, Penaflor suffered a bloody nose, a swollen and bruised face, neck pain, a headache, and pain to his wrists from the handcuffs. *Id.* at 6–7, 10, 15. He also suffered damage to his pinky finger, which, after getting an x-ray, a doctor diagnosed as "mallet finger."[3] *Id.* at 6, 10. Penaflor was given a splint to straighten the finger. *Id.* at 6. Penaflor also alleges that he lost 36 pounds due to "emotional mental distress" related to the incident. *Id.* at 6, 10. Penaflor seeks monetary damages from the defendants. *Id.* at 28–29; Dkt. 7 at 2.

---

[3] The Cleveland Clinic describes mallet finger as

> [A]n injury to the tendon that straightens the top of [the] finger (or thumb). Tendons attach [the] bones to [the] muscles, providing stability and motion. With injury, the tendon can tear or detach from the finger bone. In some cases [one] may injure [the] finger bone along with [the] tendon. If [one] has mallet finger, [one] is unable to straighten [the] finger, it droops at the tip, is painful[,] and looks bruised and/or swollen.

*Mallet Finger*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21825-mallet-finger (last visited Aug. 19, 2024).

## B.     Procedural Posture

Penaflor filed a prisoner's civil-rights complaint under 42 U.S.C. § 1983, naming the following as defendants: (1) Willis; (2) Collins; (3) Angela Chevalier, assistant warden at the Memorial Unit at the time of the incident; (4) Moises Villalobos, assistant warden at the Memorial Unit at the time of the incident; (5) Sergeant Baker; (6) mental health counselor Randall Scroggins; and (7) TDCJ Executive Director Bryan Collier. Dkts. 6, 7. At the court's request, Penaflor submitted a more definite statement of his claims. Dkts. 19, 20. After screening Penaflor's pleadings as required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court ordered Willis, Collins, Chevalier, Villalobos, and Baker to answer. Dkt. 21. But the court did not order Scroggins or Collier to answer.

In August 2022, Chevalier, Villalobos, and Baker filed a motion to dismiss, which was opposed by Penaflor. Dkts. 26, 52.  The court granted the motion and dismissed the claims against those defendants. Dkt. 54. The court also dismissed Penaflor's claims against Scroggins and Collier pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted. *Id.*

Collins and Willis now move for summary judgment on the Eighth Amendment claim, arguing that the claim is without merit. Dkt. 70. They also assert that they are entitled to qualified immunity. Penaflor has not responded to the summary-judgment motion.

## C.     The Defendants' Summary-Judgment Evidence

The defendants have submitted the following evidence in support of their summary-judgment motion:

- Penaflor's medical records from December 1, 2019, to December 1, 2020, Exhibit A (Dkt. 71)

- Use of force report, Exhibit B (Dkt. 70-2)

- Use of force video, Exhibit C (currently located in the Clerk's Office on a thumb drive)

- Use of force photos, Exhibit D (Dkt. 70-4)

Sergeant Baker prepared a report, dated June 29, 2020, as part of the use-of-force documentation related to the incident. *See* Dkt. 70-2 at 17. In relevant part, the report details the incident as follows:

> On 06/29/2020 @ approximately 0920hrs Officer Willis, Antoinio COIV was escorting Offender Penaflor, Aldo #1311140 back to D-line 1-row 19-cell from UCC. When Offender Penaflor became aggressive and pulled away turning towards Officer Willis. Officer Willis shoved Offender Penaflor to the wall then to the floor in a downward motion. Officer Collins, Devon COIV heard the use of force and rushed over to assist Officer Willis in gaining compliance. Officer Collins secured Offender Penaflor's upper torso while Officer Willis secured Offender Penaflor's legs. Sergeant Baker, Annette witness [sic] the use of force from P1-hallway and instructed hallway officer to initiate an Incident Command System. Sgt. Baker arrived on the scene and instructed Officer Collins and Officer Willis to place offender Penaflor's [sic] on his side. Officer Hagans, Quonte COIV arrived on the scene and was instructed by Sgt. Baker to relieve Officer Collins. Officer Reyes, Christopher COV arrived and was instructed by Sgt. Baker to relieve Officer Willis. Sgt. Baker then requested for a camera and camera operator to the scene.  Officer Mbamalu, Nndubisi COIV arrived on

the scene and applied the leg restraints[.] Officer Murphy, Jasmine COIV arrived as camera operator. Sgt. Baker briefed the camera and introduced the A-responders. Sgt. Baker then instructed Officer Hagans and Officer Reyes to assist Offender Penaflor to his feet. . . . Officer Reyes and Officer Hagans assisted Offender Penaflor to his feet and into 19-cell. . . . Nurse John, Christine LVN arrived and conducted a cell side medical screening, noting there where [sic] scratches on his face. Sgt. Baker briefed the camera stating Offender Penaflor's [sic] did sustained scratches on his face due to the use of force. Sgt. Baker then took photos of Offender Penaflor's injuries.

. . . .

Let it be known that Officer Collins states that he struck Offender Penaflor with a closed fist. Officer Willis states that he push [sic] Offender Penaflor with an open hand push in the back.

*Id.*

Also submitted as part of the use-of-force documentation were written statements from Collins and Willis. Officer Willis provided this statement of the incident, dated June 29, 2020:

On 6/29/20 at 920 am and at D-Line 1-Row while I CO IV Antoinio Willis was escorting offender Penaflor, Aldo TDCJ No 1311140. While escorting the offender back to his cell he became aggressive due to the fact he had yet to receive his property. The offender began to pull away from me resulting in me having to shove the offender against the window and informed him that if he continued to resist the minimum amount of force would be used to regain compliance. The offender continued to resist forcing me to push in a downward motion getting the offender on the floor and regain security hold. CO IV Devon Collins then responded and assisted me with gaining control of the offender. Sgt. Annette Baker did enter the scene and instructed CO Collins and myself to roll the offender on his side. I was then relieved by COV Christoper Reyes, and CO IV Quonte Hagan.  I then went to the unit infermary [sic] and substained [sic] no injuries due to the use of force. I then resumed my normal duties.

*Id.* at 23.

6/ 23

Officer Collins provided the following statement, dated June 29, 2020:

> On 6/29/20 at approximately 9:20am I officer Devon Collins COIV observed officer Antonio Willis COIV struggling with offender Aldo Penaflor #1311140 on the floor, I then immediately rushed over to assist Officer Willis, I then strucked [sic] the offender with a closed fist due to him still resisting. I then secured the offender upper body to gain compliance, Officer Willis secured the offender lower body. Additional staff then arrived and I was then relieved by Officer Quonte Hagans COIV and Officer Christopher Reyes COV. Sgt. Annette Baker then arrived on the scene and narrated the use of force. I then went to the unit infirmary to get a use of force physical with no injuries. I then returned to my normal working duties.

*Id.* at 25.

The use-of-force report documentation includes a "Use of Force Report, Administrative Review" which is dated July 13, 2020, and is signed as completed by assistant warden Chevalier. *Id.* at 5. This document notes that in "a review of the Unit video surveillance, the officers do appear to have struck the offender." *Id.* Similarly, a document titled "Use of Force Report, Employee Use of Force Fact Finding Inquiry," which was completed by Memorial Unit senior warden Bruce Armstrong on July 13, 2020, states that "[d]uring the review of the Unit Video Surveillance, no staff was observed with their feet on [Penaflor's] neck but Officer Willis and Officer Collins were observed striking the offender when lesser amount of force could have been used." *Id.* at 9. According to a "Reprimand Form" dated July 20, 2020, "Major Gooden, Frederick was reviewing MA-05513-06-20 and discovered that Officer Collins struck the offender involved in this incident with a closed clinch fist and he did not report it on the date that the Use of Force

occurred." *Id*. at 10.

Although the use-of-force documentation—as noted above—references a Unit Video Surveillance that apparently shows Penaflor, Willis, and Collins engaged in the incident in question, the video submitted by the defendants as part of the summary-judgment evidence does not show the incident. Instead, the video submitted as part of the evidence appears to be the use-of-force video that was recorded by Officer Murphy (as referenced in Sergeant Baker's report, *see* Dkt. 70-2 at 17). The video starts after Penaflor is on the ground, rank has arrived on the scene, and three officers are kneeling next to Penaflor. It appears that Collins and Willis have already been relieved by Officer Hagans and Officer Reyes. The three officers pull Penaflor to his feet and escort him to his cell. Towards the end of the video, a nurse conducts a brief physical examination of Penaflor while he is in the cell and she is outside the cell. The video is approximately eight minutes in length.

A Patient Chart Export, submitted as part of Penaflor's medical records, indicates that Penaflor submitted two complaints in October 2020 that his "neck has been hurting since 6-29-2020." Dkt. 71 at 8–9.

## II.   **STANDARDS OF REVIEW**

### A.   **Motion for Summary Judgment Under FRCP 56**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). The initial burden falls on the movant to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant "may meet its burden by simply 'pointing to an absence of evidence to support the nonmoving party's case.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 544 (5th Cir. 2005) (quoting *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).

Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). The non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (per curiam) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). "Conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment . . . ." *Smith v. Reg'l Trans. Auth.*, 827 F.3d 412, 417 (5th Cir.

2016) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). "It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations." *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017). Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quotation omitted). Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). Further, a court need not comb the record to find evidence that will permit a non-movant to survive summary judgment. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

As noted above, Penaflor has not filed a response to the motion for summary judgment. Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default "simply because there is no opposition, even if the failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Id.* (quoting *Hibernia Nat'l Bank*, 776 F.2d at 1279).

**B.    Qualified Immunity**

The defendants have invoked the defense of qualified immunity, which protects government officials acting within the scope of their authority from personal liability for monetary damages under certain circumstances. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In reviewing a motion for summary judgment based on qualified immunity, [courts] undertake a two-step analysis." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *rev'd on other grounds*, 577 U.S. 7 (2015). "First, [courts] ask whether the facts, taken in the light most favorable to the plaintiffs, show the officer's conduct violated a federal constitutional or statutory right." *Id.* (citations omitted). "Second, [courts] ask 'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)).

Under the first prong, a court decides "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the second prong, the court asks "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Officials who act reasonably, but mistakenly, are still entitled to the defense. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004) (citation omitted). Qualified immunity gives ample room for mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

After an official has asserted the defense of qualified immunity, the burden is on the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *see also Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) ("A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.") (quoting *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc)).

A reviewing court may address the two prongs of the qualified-immunity analysis in any sequence, depending on the circumstances of the case at hand. *Pearson*, 555 U.S. at 236; *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

III.    **DISCUSSION**

Penaflor has alleged that defendant Willis used excessive force against him when Willis, without any provocation on Penaflor's part and when Penaflor's hands were handcuffed behind his back, slammed Penaflor to the ground and then punched him several times in the face with a closed fist. Penaflor has further alleged that Officer Collins used excessive force against him when Collins, while Penaflor's hands were cuffed behind his back, punched Penaflor several times on his face and head, and when Collins put his knee on Penaflor's neck and pressed down hard. Penaflor brings his claims under 42 U.S.C. § 1983, which "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (*quoting Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Because Penaflor was, at all relevant times, a convicted felon in state prison, his excessive-force claim is governed by the Eighth Amendment. "[T]he settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Payne v. Parnell*, 246 F. App'x 884, 886 (5th Cir. 2007) (per curiam) (quoting *Hudson v. McMillian*, 503

U.S. 1, 5 (1992)). When a prisoner claims that a prison official's use of force violates the Eighth Amendment's ban on cruel and unusual punishment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). When determining whether a prison official acted maliciously and sadistically to cause harm, the court looks to five relevant factors, sometimes referred to as the "*Hudson* factors": (1) the extent of the injury suffered by the inmate; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)). These factors focus on "the detention facility official's subjective intent to punish," and intent is determined by reference to the *Hudson* factors. *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016). Although a *de minimis* injury is not cognizable, "there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). As explained by the Supreme Court, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

The court analyzes each of the five excessive-force factors in relation to the

complained of incident.[4]

### A.    The extent of the injury suffered by the inmate

The defendants argue that Penaflor's injuries of physical pain, a bloody nose, a mallet pinky finger, bruises, and headaches are no more than *de minimis*, and that the plaintiff's alleged injuries—aside from the cell-side screening where the nurse noted scratches to Penaflor's face and Penaflor's complaint of neck pain in October 2020—are not mentioned in Penaflor's medical records.

Although "[i]t is true that, [t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*[,]" the Fifth Circuit has

---

[4] Although Penaflor has not submitted a response to the summary-judgment motion, his response to the court's request for a more definite statement—which is considered part of the complaint, *see Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)— is sworn to under penalty of perjury. The court will therefore treat the plaintiff's answers contained in the more definite statement (Dkt. 19) as competent summary-judgment evidence. *See Huckaby v. Moore,* 142 F.3d 233, 240 n. 6 (5th Cir. 1998) ("The facts put forth in a verified complaint may be treated as if in an affidavit on summary judgment, if the asserted facts meet the requirements of Fed. R. Civ. P. 56(e) that they be within the personal knowledge of the affiant, that they otherwise would be admissible into evidence, and that the affiant be competent to testify."); *Hart v. Hairston,* 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017) (finding that declarations and verified pleadings of a *pro se* prisoner that are dated and made under penalty of perjury constituted adequate summary-judgment evidence; *Cantwell v. Sterling*, 788 F.3d 507, 509 n.1 (5th Cir. 2015) ("The ordinary rules of civil procedure are applicable in prisoner suits. Cantwell offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment.").

The court notes that Penaflor's amended complaint is not verified under penalty of perjury and is thus not competent summary-judgment evidence. *See Narro v. Edwards*, 829 F. App'x 7, *11–12 (5th Cir. 2020) (per curiam) (finding that an unverified complaint is not competent summary-judgment evidence).

emphasized that "the injury requirement is a sliding scale, not a hard cutoff." *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022) (internal quotation marks and citations omitted).[5] "[T]he amount of injury necessary to satisfy [the] requirement of 'some injury' . . . is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (internal quotation marks and citations omitted).

Here, there is evidence in the record that Penaflor suffered psychological and physical injuries—including abrasions to his face, a bloody nose, neck pain, headaches, pain to his wrists, and a mallet finger that required a splint to fix—as a result of the incident with Willis and Collins.[6] Under Penaflor's version of the facts, no amount of force was necessary in the circumstances presented. This factor weighs in Penaflor's favor.

---

[5] Although the issue in *Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022) concerned an excessive-force claim under the Fourth Amendment, "a claim of excessive force by a law enforcement officer is analyzed under the same standard regardless of whether it arises under the Fourth Amendment or the Eighth Amendment." *Payne v. Parnell*, 246 F. App'x 884, 889 (5th Cir. 2007) *(*citing  *Ikerd v. Blair,* 101 F.3d 430, 434 n. 9 (5th Cir. 1996)).

[6] That all of Penaflor's injuries are not reflected in the medical records submitted by the defendants is not dispositive on this factor. The medical records submitted by the defendants encompass the period of December 1, 2019, to December 1, 2020. Penaflor asserts that the injury to his finger was not x-rayed until April 21, 2021. *See* Dkt. 19 at 7. Thus, any doctor's notes or treatment related to the mallet finger are not included in the medical records submitted by the defendants.

**B.      The need for the application of force**

The second *Hudson* factor is the need for the application of force. Under

Penaflor's version of the incident, there was no need for the application of force

because he merely asked Officer Willis about his property; he did not refuse

housing, disobey an order, or make any threatening moves. *See* Dkt. 19 at 3–4.

The defendants argue that "Penaflor's purported compliance and overall

version of events are contradicted by video evidence." Dkt. 70 at 9. Relying on

purported video evidence, Defendants go on to assert:

> While the audio is muddled, making it difficult to discern what was
> initially said between Willis and Penaflor, the video evidence clearly
> shows that Penaflor first turns away from, and then proceeds to pull
> away from Willis. Ex. C. Although the subsequent sequence of events
> occurs in a matter of seconds, it appears that Willis attempts to turn
> Penaflor around to continue walking, but when met with further
> resistance from Penaflor, Willis is forced to use force to gain Penaflor's
> compliance. *Id*. As shown by the video, Collins can be seen from across
> the hallway where he first observes the use of force and runs toward
> Penaflor and Collins. *Id*. Notably, Collins [sic] actions once he arrives
> at the use of force scene, in no way resemble Penaflor's allegations that
> he repeatedly hit him. *Id*. Although Penaflor can be seen laying on the
> ground, Willis still looks like he is struggling with gaining compliance
> over Penaflor, and Collins can be seen stabilizing Penaflor's upper
> body in order to assist Willis.

*Id*. Although the *motion* for summary judgment asserts that the video evidence

supports this sequence of events, the video submitted with the defendants'

summary-judgment motion—which appears to be the use-of-force video recorded

by Officer Murphy—does not. As noted in Section I.C., the video submitted with

the motion starts after Penaflor is already laying on the ground, rank has arrived

on the scene, and three officers are kneeling next to Penaflor. It appears that Officers Collins and Willis are not even in the video, having already been relieved by Officer Hagans and Officer Reyes.

Thus, the only summary-judgment evidence concerning the defendants' version of the incident is the use-of-force documentation. According to this documentation, Penaflor began to "pull away" from and "resist" Willis, necessitating Willis taking Penaflor to the ground. *See* Dkt. 70-2 at 23. Both parties' summary-judgment evidence indicates that Collins punched Penaflor with a closed fist at least one time when Penaflor was already stomach-down on the ground, with his hands cuffed behind his back.

Viewing the facts in the light most favorable to Penaflor, the record reflects genuine questions about whether force was necessary at the time Penaflor was taken to the ground and after.

## C.   The relationship between the need and the amount of force used

For the third factor, the defendants assert that the amount of force was reasonably measured and directly correlated to Penaflor pulling away from Willis. Citing *Waddleton v. Rodriguez*, 750 F. App'x 248, 251, 254 (5th Cir. 2018) and *McCoy v. Esquivel*, 798 F. App'x 818, 819–20 (5th Cir. 2020), the defendants argue that "Penaflor's sudden physical movement in refusal to cooperate created a need for the use of force." Dkt. 70 at 10 (internal quotation marks omitted). The defendants again rely on alleged video evidence that was not submitted as part of

the summary-judgment record for disputing Penaflor's claim that Willis and Collins punched him several times each.

Although Penaflor admits that he briefly stopped walking to ask Willis about his personal property, Penaflor further states that Willis brought him down to the ground, Willis and Collins both punched him multiple times, and that Collins put his knee on Penaflor's neck and "pressed down hard." The video evidence the defendants rely on in their motion is not part of the summary-judgment record. Therefore, viewing the facts in the light most favorable to Penaflor, the record reflects genuine questions about the need for force and the amount of force Officers Willis and Collins used.

### D.    The threat reasonably perceived by the responsible officials

The defendants argue that as to the fourth factor, when Penaflor refused to obey Willis's order, Willis reasonably perceived Penaflor's actions as disturbing the order of the prison, and when Penaflor continued to struggle against Willis, Willis and Collins perceived aggression and continued disturbance to the order of the prison and took necessary measures to restrain Penaflor. As discussed above, Penaflor presents evidence that contests the defendants' version of the events, alleging that he did not disobey any orders and did not struggle. Viewing the facts in the light most favorable to Penaflor, the record reflects genuine questions about the threat reasonably perceived by Officer Willis and Officer Collins.

### E.    Any efforts made to temper the severity of a forceful response

As for the fifth *Hudson* factor, the defendants rely on a video not submitted as part of the summary-judgment evidence. The defendants assert that once Penaflor is on the ground, no additional force is used by Willis or Collins. Once the additional officers arrived on the scene, Willis and Collins were relieved and promptly leave, which tempered the use of force. This video is not part of the record. Penaflor, for his part, has submitted evidence that once rank arrived on the scene, Collins put his knee on Penaflor's neck and pushed down hard. This fifth factor weighs in favor of Penaflor.

Accordingly, based on the evidence, the record reflects a genuine factual dispute on each of the five excessive-force factors. The defendants are therefore not entitled to summary judgment on the question of whether they violated Penaflor's Eighth Amendment rights.

Because the defendants have invoked the defense of qualified immunity, the court must also determine whether the defendants' conduct was objectively reasonable in light of clearly established law. Clearly established law holds that a prison official violates the Eighth Amendment when the official applies force "maliciously and sadistically to cause harm" or uses force that is "wanton and unnecessary" because it is beyond that reasonably required to maintain or restore discipline. *See Hudson*, 503 U.S. at 6–7; *Payne*, 246 F. App'x at 886. Therefore, if the defendants used physical force maliciously and sadistically to cause Penaflor

20/ 23

harm or force beyond that reasonably required to maintain or restore discipline, then a reasonable officer in the defendants' situation would have known that his or her actions violated clearly established law. Accordingly, genuine issues remain as to whether the defendants are entitled to qualified immunity.

## IV.   PENAFLOR'S PREVIOUS REQUEST FOR APPOINTMENT OF COUNSEL

Penaflor has previously moved for appointment of counsel. *See* Dkt. 36. In its order denying Penaflor's request for counsel, the court stated that it would revisit the issue on its own motion as necessary. *See* Dkt. 57; *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (explaining that under Federal Rule of Civil Procedure 54(b), a court is free to reconsider its earlier orders and decisions "for any reason it deems sufficient . . . ."). A district court may appoint counsel for an indigent inmate where a case presents exceptional circumstances, such as a trial that "will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted); *see also Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015). Because the assistance of trained counsel will be necessary for purposes of a trial and any trial preparation, the court reconsiders its earlier order denying Penaflor's request for counsel and will now grant Penaflor's motion for appointment of counsel for further proceedings in this case.

However, the court must make a finding of indigency before counsel can be

appointed. *See* 28 U.S.C. § 1915(e)(1). Therefore, in order for *pro bono* counsel to be appointed to represent Penaflor throughout the remainder of the case, Penaflor must file an application for leave to proceed *in forma pauperis*, together with a certified copy of his inmate trust fund account statement as required by 28 U.S.C. § 1915(a)(2), **no later than thirty (30) days from the date of this Order**.

The court will temporarily stay this case until a volunteer attorney can be located and appointed as Penaflor's counsel of record. The pending motions filed by Penaflor at Docket Nos. 66, 67, and 68 will be **denied** at this time, subject to their reurging by counsel, if appropriate, once counsel is appointed. The Office of the Attorney General's Motion to Withdraw and Substitute Counsel, Dkt. 74, will be **granted**.

\* \* \*

For the reasons stated above, the court **ORDERS** as follows:

1.   The motion for summary judgment (Dkt. 70) filed by defendants Antonio Willis and Devon Collins is **DENIED**.

2.   The defendants' Motion to Seal Exhibit A (Dkt. 69) is **GRANTED**.

3.   The motions at Docket Nos. 66, 67, and 68 are **DENIED** at this time.

4.   The Office of the Attorney General's Motion to Withdraw and Substitute Counsel, Dkt. 74, is **GRANTED**. The Clerk shall replace Assistant Attorney General Marlayna M. Ellis with Assistant Attorney General Jordan Grundhoefer as the defendants' attorney-of-record.

5.   Penaflor shall file an application for leave to proceed *in forma pauperis*, along with a certified copy of his inmate trust fund account statement within **thirty (30) days** of the date of this Order so that the court can appoint a licensed, well-qualified litigator to represent him *pro bono*

throughout the remainder of the case.

6.  This case is **ADMINISTRATIVELY CLOSED** and **STAYED** until the court locates a volunteer attorney to represent Penaflor. Once counsel is located, the court will re-open this case and issue a separate order for a status conference.

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

Signed on Galveston Island this  10th  day of    September          , 2024.


_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE